UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN DAVIS,

                              Plaintiff,

          v.

JAIFA COLLADO, *Deputy Superintendent of Programs*; FREDERICK BERNSTEIN, M.D., *Director of Health Services*; ELADIO CRUZ, *Correction Officer*,

                              Defendants.

No. 16-CV-7139 (KMK)

<u>OPINION AND ORDER</u>

Appearances:

Kevin Davis,
Attica, NY
*Pro Se Plaintiff*

Sofya Uvaydov, Esq.
Assistant Attorney General of the State of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Kevin Davis ("Plaintiff"), currently an inmate at Attica Correctional Facility ("Attica"), filed the instant Complaint ("Compl."), pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and 42 U.S.C. § 1983, against New York Department of Correction & Community Supervision ("DOCCS") officials Deputy Superintendent of Programs Jaifa Collado ("Collado"), Director of Health Services Dr. Frederick Bernstein ("Bernstein"), and Correction Officer Eladio Cruz ("Cruz") (collectively "Defendants").  (*See* Compl. (Dkt. No. 1).)  Plaintiff alleges that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments.  (*See generally* Compl.)

Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Not. of Mot. (Dkt. No. 20).) For the following reasons, Defendants' Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

#### 1. Plaintiff's Transfer From B-Block to A-Block

The following facts are taken from Plaintiff's Complaint, (Compl.), and the exhibits attached to it, Plaintiff's August 29, 2017 letter replying to Defendants' pre-motion conference request, (Letter from Kevin Davis to Court ("Pl.'s Reply Letter") (Dkt. No. 16)), Plaintiff's Opposition to Defendants' Motion to Dismiss, (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 23)), Plaintiff's December 5, 2017 application for a temporary restraining order and a preliminary injunction ("Pl.'s TRO App."), (Dkt. No. 29)), and Plaintiff's sur-reply, (Pl.'s Mem. of Law in Further Opp'n to Defs.' Mot. To Dismiss ("Pl.s' Reply") (Dkt. No. 34)).

On August 25, 2015, Plaintiff was moved within Green Haven Correctional Facility ("Green Haven") from housing block B ("B-Block") to housing block A ("A-Block"). (*See* Compl. 9.) As a result, Plaintiff was removed from his work program in the mess hall of B-Block. (*Id.*) On August 26, 2015, when Plaintiff tried to return to his work program in B-Block, Cruz denied his return and called an officer from A-Block to escort Plaintiff out of the mess hall. (*Id.* at 9–10.) That same day Plaintiff filed an informal letter complaining about his transfer and requested more information as to why he was moved. (*Id.* at 19.) According to a letter to Plaintiff from a Nurse Administrator, Plaintiff was moved because he takes insulin, which is a "1:1" medication, and all inmates on 1:1 medications are housed on E or A-block unless they are

honor block inmates.  (*Id.* at 23.)

On September 1, 2015, Plaintiff formally filed a grievance, requesting to be moved back to B-Block.  (*Id.* at 26.)  His request was denied on October 7, 2015, because "[t]he facility administration has determined the Blocks A and E will be where inmates requiring medication will be housed."  (*Id.*)  Over the course of October and November 2015, Plaintiff submitted additional grievance reports and contacted the Legal Aid Society to help him get his job in the mess hall back.[1]  (*Id.* at 27–46.)  On December 29, 2015, Plaintiff was reassigned to work in the mess hall.  (*Id.* at 11.)

### 2.  Alleged Retaliation

Plaintiff alleges that after he filed his grievance report, Defendants and other non-parties retaliated against him by conducting unwarranted cell searches, filing misbehavior reports, and taking other unlawful actions against him.  (Compl. at 10.)

### a.  Cell Searches

Plaintiff alleges that within the first couple of minutes of being transferred to his new cell in A-Block on August 25, 2015, Cruz and an unknown officer searched Plaintiff's cell "in retaliation for his complaint about his move."[2]  (Pl's Mem. 3.)  On December 30, 2015, Collado and Officer Mendez, a non-party, searched Plaintiff's cell in A-Block allegedly looking to confiscate Plaintiff's legal documents.  (*See* Compl. 11.)  Over the course of an unspecified date range, Plaintiff alleges that Cruz conducted searches of Plaintiff's cell "[t]hree (3) times a day for

---

[1] Due to an oversight Plaintiff was listed as a paid mess hall worker during the time he was housed in Block A, resulting in some confusion in the correspondences between the Legal Aid Society and Green Haven staff.  (Compl. 35, 39.)

[2] However, Plaintiff also ambiguously states that "the real reason is [due] to the plaintiff[']s criminal charge."  (Pl.'s Mem. 3.)

over a month." (Pl.'s Reply Letter 7.) Plaintiff also alleges that, at another unspecified point in time, Collado "caused 'destruction' of [P]laintiff's property" within his cell, which "[e]mpowered a feeling of fear and abhorrence . . . something frightful or shocking" within Plaintiff. (*Id.* at 4.)

### b. Misbehavior Reports

Plaintiff alleges that he was "constantly 'targeted' with misbehavior reports . . . because [he] is a prisoner seeking to file a complaint." (Compl. 12.) On January 26, 2016, Officer Batista, a non-party, wrote a misbehavior report against Plaintiff for "interference" and "harassment" because Plaintiff had a diarrhea-related accident and did not clean up his "mess" fast enough.[3] (*Id.* at 11.) As a result, Plaintiff received a penalty of five days of "keeplock deferred for (90) days." (*Id.*) On February 12, 2016, Officer Stevens, a non-party, wrote a misbehavior report against Plaintiff for "conduct which disturb[ed] the order of the facility," so that Plaintiff received a penalty of 36 days of "'keeplock' with all privilege[s] taken away" until March 18, 2016. (*Id.*) On April 4, 2016, Officer Batista wrote a misbehavior report against Plaintiff for "threats," "refusing [a] direct order," and "harassment." (*Id.* at 11–12.) As a result, Plaintiff received a penalty of 110 days of "keeplock" and the "loss of all privileges." On July 8, 2016, Officer Ernst, a non-party, wrote a misbehavior report against Plaintiff for what appears to be making threats, not following a direct order, and "[not] carry[ing] [his] ID card at all times." (*Id.* at 12.)

### c. Other Retaliatory Acts

Plaintiff alleges that as further retaliation, during an unspecified date range, but sometime

---

[3] Plaintiff was diagnosed with prostate cancer on September 29, 2015. (*See* Compl. 10.) Plaintiff asserts that his doctor told him one of the side effects of radiation would be diarrhea. (*Id*. at 11.)

after he filed his grievance, Plaintiff's "cell lights and water had been turned off" and remained off for an extended period of time. (Pl.'s Reply Letter 3.) It is not clear whether Plaintiff's cell lights and water remained off for 30 days, (*see* Pl.'s Mem. 4), or 110 days, (*see* Pl.'s Mem. 12).

Over the course of another unspecified date range, Plaintiff alleges that as further retaliation he was "only given food and drink every two to three days a week." (Pl.'s Mem. 4.) Plaintiff also states that he was only given food "32 days out of 110 days." (*Id.* at 12.) Plaintiff also alleged that he was not provided sheets, a blanket, or a pillow for 110 days, (*id.*), was not given his daily injection for his medical disability, (*id.* at 4), had his toilet shut down, (*id.*), received "no medical treatment for 98 days," (*id.* at 12), was "beat . . . every day for 110 days," (*id.*), and had his incoming mail destroyed for 110 days, (*id.*).

Plaintiff also alleges that as further retaliation he was sexually assaulted on April 1, 2016 by Officer W. Stevens. (*See* Compl. 11; Pl.'s Reply Letter 5; Pl.'s Mem. 4, 12).) Specifically, Officer Stevens allegedly took Plaintiff to a room, removed Plaintiff's pants, and with a glove on, inserter his finger in Plaintiff's rectum. (*See* Pl.'s Reply Letter 5.) Elsewhere in his filings Plaintiff also alleges that the sexual assault involved "another unknown Correction Officer." (*Id.* at 7.)

### d. Other Miscellaneous Acts

Plaintiff includes several factual allegations under a "First Amendment-'Freedom of Religion'" subheading in his Opposition to Defendants' Motion to Dismiss Memo. (Pl.'s Mem. 6.) For example, Plaintiff alleges that he was unable to pray because all of his Bibles were destroyed by the "correction officers in question." (*Id.*) Plaintiff further alleges that he was told by the "correction officer(s) in question" that if they heard or saw Plaintiff praying, they would come into his cell and beat him. (*Id.*) Plaintiff was allegedly also threatened by "another

corrections officer" that if he contacted the press, he would "never walk again." (*Id*.)

Plaintiff makes several allegations specifically with respect to Collado's treatment of him. Plaintiff alleges that she was "anti-[P]laintiff to the point of NAZI-ISM" and acted as though she was "running Auschwitz." (*Id*. at 9.) Plaintiff alleges that Collado was "the ring leader" and "made sure she came to [Plaintiff's] cell every other day . . . to make sure [] that [Plaintiff] was in 'pain.'" (*Id*. at 12.) Plaintiff further alleges that Collado caused him post-traumatic stress disorder and instructed "said correction officers under her control" to "cause pain, fear, confinement, no medical attention, sexual abuse, false reports, segregation," among other harms, to Plaintiff. (*Id*. at 9.)

Plaintiff alleges that Dr. Bernstein was "controlled by prison officials to lie" and makes a notation of "improper medical treatment" next to Dr. Bergstein's name. (Pl.'s Reply Letter 7.) Plaintiff also alleges that "by speaking to Dr. Bernstein[,]" Collado "made sure that Plaintiff was not given his medical needs." (*Id*.)

B. Procedural Background

Plaintiff filed his Complaint on September 13, 2016. (*See* Compl.) On March 17, 2017, the Court granted Plaintiff's request to proceed in forma pauperis. (*See* Dkt. No. 8.) On April 27, 2017, the Court issued an Order directing service on Defendants. (*See* Dkt. No. 9.) On August 11, 2017, Defendants submitted a pre-motion letter to the Court requesting a pre-motion conference to discuss Defendants' proposed Motion To Dismiss. (*See* Dkt. No. 14.) On August 22, 2017, the Court granted Defendants' request to file a Motion To Dismiss and set a briefing schedule. (*See* Dkt. No. 15.) On August 29, 2017, Plaintiff filed a letter in reply to Defendants' pre-motion conference request. (Pl.'s Reply Letter.)

On October 3, 2017, Defendants filed their Motion To Dismiss and accompanying papers. (*See* Not. Of Mot. (Dkt. No. 20); Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 21).) On November 7, 2017, Plaintiff's filed his Opposition to Defendants' Motion to Dismiss. (Pl.'s Mem.)

On December 5, 2017, Plaintiff filed an application for a temporary restraining order against Defendants and a preliminary injunction to prevent his transfer from Attica Correctional Facility ("Attica") to Green Haven. (*See* Pl.'s TRO App.) On December 18, 2017, the Court denied Plaintiff's application without prejudice. (*See* Dkt. No. 31.)

Defendants filed their Reply in Further Support of their Motion To Dismiss on December 21, 2017. (*See* Defs.' Mem. of Law in Further Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 32).) Plaintiff filed a sur-reply on January 8, 2018. (*See* Pl.s' Reply.)

On January 8, 2018, Plaintiff also filed a letter requesting a hearing regarding his denied application for a temporary restraining order and a preliminary injunction, (*see* Dkt. No. 33), which the Court denied on January 10, 2018, (*see* Dkt. No. 35).

## II.  Discussion

### A.  Standard of Review

Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Defs.' Mem. 1.)

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as

true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en banc)). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547

F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (internal quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing. *Carter*, 822 F.3d at 57.

### 2. Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked
assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks
omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief
above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated
adequately, it may be supported by showing any set of facts consistent with the allegations in the
complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that
is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the
line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556
U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a
context-specific task that requires the reviewing court to draw on its judicial experience and
common sense. But where the well-pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the
pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R.
Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the
hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery
for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the
factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per
curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency
of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted));
*Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a
dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true

. . . .” (alteration and internal quotation marks omitted)).  Further, “[f]or the purpose of resolving

[a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff.”

*Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v.*

*Christie’s Int’l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the Court must “construe[] [his complaint]

liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s].”  *Sykes v. Bank of*

*Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also*

*Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec.

2, 2013) (same), *aff’d sub nom. Farzan v. Genesis 10*, 619 F. App’x 15 (2d Cir. 2015).

However, “the liberal treatment afforded to pro se litigants does not exempt a pro se party from

compliance with relevant rules of procedural and substantive law.”  *Bell v. Jendell*, 980 F. Supp.

2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga*

*County*, 517 F.3d 601, 605 (2d Cir. 2008) (“[P]ro se litigants generally are required to inform

themselves regarding procedural rules and to comply with them.”  (italics and internal quotation

marks omitted)).

Generally, “[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken.”  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal

quotation marks omitted).  However, when the complaint is filed by a pro se plaintiff, the Court

may consider “materials outside the complaint to the extent that they are consistent with the

allegations in the complaint,” *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4

n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, “documents that a pro

se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendants' request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). *See also See Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases and holding that a court may rely on factual allegations raised for the first time in a pro se plaintiff's opposition papers if consistent with the allegations in the complaint).

B.  Analysis

Defendants move to dismiss the Complaint, arguing that Plaintiff cannot bring an ADA claim for money damages against the defendants in their individual or official capacities and that the ADA claim is barred by the Eleventh Amendment because Plaintiff fails to allege the actions were taken because of discriminatory animus or ill will.  (Defs.' Mem. 1–2.)  Defendants further argue Plaintiff's § 1983 claim fails because he has no liberty interest in his prison job, and because he fails to allege that Defendants were personally involved in the alleged retaliatory actions.  (*Id.*)

1.  Claims Arising Out Of Plaintiff's Transfer From B-Block to A-Block

a.  ADA Claim

Plaintiff brings a claim under Title II of the ADA against Defendants in their official capacity.  (*See* Compl. 4)  Plaintiff alleges that he was moved from B-Block to A-Block solely

because he was "insulin dependent" and that this resulted in his removal from his work program in B-Block. (*Id.* at 5.)[4]

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that Title II extends to inmates in state prisons. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). For an incarcerated plaintiff to assert a claim under the ADA, the plaintiff must allege that he or she "was denied the opportunity to participate in or benefit from [the prison administration's] services, programs, or activities or [the prison administration] otherwise discriminated against him by reason of his disability." *Allah v. Switz*, No. 14-CV-5970, 2017 WL 519269, at *8 (S.D.N.Y. Feb. 8, 2017) (alterations in original) (citing *Wright v. N.Y. State Dept. of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)); *see also Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (same).

Defendants argue that in the Second Circuit, "claims for damages [] cannot be asserted against government officials sued in their *official capacity* under the ADA." (Defs.' Mem. 5.) However, contrary to Defendants' claim, "[w]hether individuals can be sued for damages under the ADA . . . in their *official capacities* . . . is unsettled in the Second Circuit." *Monroe v.*

---

[4] Plaintiff, however, also alleges that "the real reason" for his transfer was due "to the plaintiff['s criminal charge[,]" (Pl.'s Mem. 2), and that instead of being moved for medical reasons, he was moved "for punishment[,]" (Pl.'s Reply 4). Defendants argue that because Plaintiff contends that his transfer was not even related to an alleged disability, his ADA claims must be dismissed. (*See* Def.'s Reply 2.) Because Plaintiff is filing *pro se*, the Court construes Plaintiff's complaint liberally and interprets it to raise the strongest argument that it suggests. *Sykes*, 723 F.3d at 403. Thus, the Court will address Plaintiff's ADA claim in light of his first alleged reason: that he was moved for being insulin dependent.

*Gerbing*, No. 16-CV-2818, 2017 WL 6614625, at *15 (S.D.N.Y. Dec. 27, 2017) (alterations

omitted). Numerous lower courts in the Second Circuit have held that the ADA does not provide

for liability against individual defendants in their official capacities. *See, e.g.*, *Id. at *15*; *Keitt v.*

*N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 11-CV-855, 2015 WL 2383687, at *21

(W.D.N.Y. May 19, 2015) ("Courts have held that . . . individuals [cannot] be named as

defendants in ADA or Rehabilitation Act suits in their official or representative capacities.");

*Myers v. N.Y.-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at *9 (E.D.N.Y.

Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is

no individual liability under Title I or Title II of the ADA, regardless of whether the claim is

brought in an individual or official capacity."); *Maus v. Wappingers Cent. Sch. Dist.*, 688 F.

Supp. 2d 282, 302 n.10 (S.D.N.Y. 2010) ("[I]ndividuals cannot be named as defendants in ADA

or Rehabilitation Act suits in their official or representative capacities." (internal quotation marks

omitted)); *Carrasquillo v. City of New York.*, 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004)

("Individuals cannot be named as defendants in ADA suits in either their official or

representative capacities.").[5] Yet, others have reached the contrary conclusion, *see, e.g.*, *Cole v.*

---

[5] While many of these courts espouse this principle without any further discussion, *see, e.g.*, *Maus*, 688 F. Supp. 2d at 302 n.10; *Carrasquillo*, 324 F. Supp. 2d at 441, some provide varying explanations for the conclusion that ADA suits cannot be brought against individuals in their official capacities, *see, e.g.*, *Harrington v. Vadlamudi*, No. 13-CV-795, 2014 WL 4829483, at *4 (N.D.N.Y. Sept. 29, 2014) (explaining that individuals sued in their official capacities under the ADA or Rehabilitation Act are "immune from a suit for damages because, pursuant to the Eleventh Amendment of the United States Constitution, state officials are not liable for money damages when sued in their official capacities"); *Hallett v. N.Y. State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 199–200 (S.D.N.Y. 2000) (concluding that the ADA and Rehabilitation Act do not provide for official capacity suits because the statutory language prohibits "discrimination by a '*public entity*,'" which, "as it is defined in the statute[s], does not include individuals" (emphasis added) (internal quotation marks omitted)); *Candelaria v. Cunningham*, No. 98-CV-6273, 2000 WL 798636, at *3 (S.D.N.Y. June 20, 2000) (explaining that "there is no need for official capacity litigation when an individual can sue a government

*Goord*, No. 05-CV-2902, 2009 WL 2601369, at *5 (S.D.N.Y. Aug. 25, 2009) (finding that individuals can be sued for damages in their official capacities under the ADA because "the suit addresses the office—a 'public entity'—not the officer personally"), in light of the Second Circuit's decision in *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003), which held that an individual sued for injunctive relief in his or her official capacity is effectively a "public entity" subject to liability under the ADA because the government is the real party in interest in an official capacity suit, *id.* at 288.

Nonetheless, even under this latter school of thought, any official capacity claims against Defendants would fail. The Second Circuit has held that an ADA claim for damages against a state (or state agency or official) is not barred by the Eleventh Amendment "if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will *due to disability*." *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 112 (2d Cir. 2001) (emphasis added); *accord Johnson v. Goord*, No. 01-CV-9587, 2004 WL 2199500, at *19 (S.D.N.Y. Sept. 29, 2004) (dismissing official capacity claims "under [§] 504 of the Rehabilitation Act and Title II of the ADA . . . because those laws do not provide for money damages against the state or state officials in their official capacities, absent a showing that any violation was motivated by discriminatory animus or ill will due to the disability" (citing, inter alia, *Garcia*, 280 F.3d at 108, 111–12)).

Here, Plaintiff does not allege that any Defendant acted with discriminatory *animus or ill will* based on Plaintiff's diabetes or insulin dependence. (*See generally* Compl.) The correspondence from a Nurse Administrator, attached to Plaintiff's Complaint as an exhibit,

---

entity directly," as is the case under both the ADA and Rehabilitation Act) (citing *Kilcullen v. N.Y. State Dep't of Labor*, 205 F.3d 77, 82 (2d Cir. 2000)).

explains that "[a]ll inmates on 1:1 meds are to be housed on E or A-block, unless they are honor block inmates." (*Id.* at 23.) Rather than demonstrating animus or ill will, this exhibit establishes that Defendants moved Plaintiff to accommodate his insulin dependence. Beyond this exhibit, Plaintiff fails to allege any facts that would plausibly suggest Defendants were motivated by ill will or discriminatory motives. For example, he cites no discriminatory comments by Defendants. Thus, even if Plaintiff could bring an ADA claim for monetary damages against Defendants in their official capacities, such claims would fail in the absence of any plausible allegations of discriminatory animus or ill will. *See Chambers v. Wright*, No. 05-CV-9915, 2007 WL 4462181, at *4 (S.D.N.Y. Dec. 19, 2007) (dismissing ADA and Rehabilitation Act claims where the "[p]laintiff d[id] not make any allegations concerning [the] [d]efendants' discriminatory animus or ill will"); *Renelique v. Goord*, No. 03-CV-525, 2006 WL 2265399, at *11 (N.D.N.Y. Aug. 7, 2006) (dismissing official capacity claims under the ADA where the plaintiff did "not allege[] any facts that would support a conclusion that [the] [d]efendants acted with discriminatory animus or ill will toward him"). Plaintiff's ADA claim is thus dismissed.

### b. Fourteenth Amendment Claims

Plaintiff also alleges that when he was transferred to A-Block and removed from his work program in B-Block, Defendants violated his rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. (*See* Compl. 3–6.) "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). The statute itself "creates no substantive rights," but provides an avenue for redress for the "deprivation[] of rights established elsewhere." *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985); *see also Louis v. Metro. Transit Auth.*, 145 F. Supp. 3d 215, 223 (E.D.N.Y. 2015) (same). Thus, to state a § 1983

claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (internal quotation marks omitted). But to establish liability under a § 1983 claim, a plaintiff must show that "any given defendant was personally involved in the allegedly unlawful conduct." *Brown v. Montone*, No. 17-CV-4618, 2018 WL 2976023, at *3 (S.D.N.Y. June 13, 2018) (alterations and internal quotation marks omitted); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.") (internal quotation marks omitted).

Here, Plaintiff fails to allege how any of the three defendants were personally involved in Plaintiff's transfer from B-Block to A-Block. Plaintiff does not allege that any of the three defendants knew of or had any part in the decision to move him to A-Block nor that they knew about his medical conditions. All allegations against Defendants postdate Plaintiff's transfer to A-Block. Plaintiff was moved on August 25, 2015 and the first incident he describes took place on August 26, 2015 when Cruz allegedly had him removed from the mess hall. (Compl. 9–10.) On this basis alone, Plaintiff's § 1983 claim fails. Yet, even if Plaintiff did specify who was personally involved in his transfer, his due process and equal protection claims would still fail.

### i. Due Process Claim

"In order to prevail in an action based on § 1983 and the Fourteenth Amendment, a prison inmate must demonstrate a deprivation of a liberty interest protected by the Due Process Clause itself, or a violation of a state-created liberty interest." *Cespedes v. Coughlin*, 956 F. Supp. 454, 465 (S.D.N.Y. 1997) *reconsideration granted on other grounds by* 179 F.R.D. 122

(S.D.N.Y. 1998).  It is well settled that in "New York[,] a [prisoner] has no protected liberty interest in a particular job assignment." *Johnson v. Rowley*, 569 F.3d 40, 44 (2d. Cir. 2009) (citing *Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996) (per curiam); *see also Njasang Nji v. Health*, No. 13-CV-200, 2013 WL 6250298, at *7 ("[T]he Second Circuit has held that prisoners have no protected liberty or property interest in a particular job assignment."); *Bowden v. Duffy*, No. 13-CV-717, 2014 WL 338786, at *4 (S.D.N.Y. Jan. 30, 2014) ("[E]ven if the plaintiff was led to quit his job due to discrimination, he has not stated a claim upon which relief can be granted."); *Saulter v. Hanslmaier*, No. 94-CV-6855, 1997 WL 177887, at *3 (S.D.N.Y. Apr. 14, 1997) (holding that refusal to return prisoner to job held or the dormitory in which he lived prior to keeplock confinement did not violate due process because "[i]n New York, a prisoner has no protected liberty interest in a particular job assignment").  Thus, because there is no constitutional liberty interest in Plaintiff's mess hall work program in B-Block, Plaintiff's due process claim under the Fourteenth Amendment fails and is dismissed.

### ii.  Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner."  *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996).  In other words, "the Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (internal quotation marks and emphasis omitted); *see also Bailey v. Town of Evans*, 443 F. Supp. 2d 427, 430 (W.D.N.Y. 2006) (same).  Put succinctly, to state a violation of the Equal Protection Clause, a plaintiff must allege

"that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005); *see also Barrow v. Van Buren*, No. 12-CV-1268, 2015 WL 417084, at *22 (N.D.N.Y. Jan. 30, 2015) (same); *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008) ("In order to plead a facially valid equal protection claim . . . [a] plaintiff must allege: (1) that he has been treated differently from similarly-situated inmates, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race, religion, national origin, or some other protected right.").

Plaintiff fails to allege that any discrimination he suffered was based on a constitutionally impermissible basis. When official action classifies by a suspect class, e.g., "race, alienage, or national origin," the action is "subjected to strict scrutiny and will be sustained only if [it is] suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Individuals with disabilities, however, do not qualify as a suspect class. *Id.* at 442. When disability discrimination is at issue, "the Fourteenth Amendment only proscribes government conduct for which there is no rational relationship between the disparity of treatment and some legitimate governmental purpose." *Garcia*, 280 F.3d at 109; *see also O'Neill v. Hernandez*, No. 08-CV-1689, 2009 WL 860647, at * 7 (S.D.N.Y. March 31, 2009) (holding that disabled persons are not a "suspect" class) (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001))). Here, Defendants contend that "reasonable prison officials in [D]efendants' positions could have believed that the alleged actions . . . were done for permissible administrative convenience." (Defs.' Mem. 2.) The Nurse's correspondence to Plaintiff, (Compl. 23), and the denial of Plaintiff's grievance, (*id.* at 26), both explain that all inmates requiring "1:1" medication were housed in Block A and E, seemingly for administrative

convenience—Plaintiff in particular, required frequent insulin treatment. Defendants point out that Plaintiff himself admits that he was moved to Block A so that the medical staff could administer his insulin on a 1:1 basis. (Defs.' Mem. 8; Compl. 5.) This conduct not only is not discriminatory, it is entirely rational under the circumstances.

Plaintiff appears to allege a "class-of-one" theory of equal protection, arguing that he was treated differently from others similarly disabled and that there was no rational basis for the difference in treatment. A class-of-one claim arises when a plaintiff claims that he was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam). To successfully state a class-of-one selective treatment equal protection claim, a plaintiff has to offer evidence officials "intentionally treated" the plaintiff differently from other similarly situated individuals. *See, e.g.*, *Giordano v. City of New York*, 274 F.3d 740, 743 (2d Cir. 2001) ("We affirm [dismissal of § 1983 claims] because [Plaintiff] did not in any event introduce evidence to show that defendants *intentionally* treated [him] differently from others similarly situated.") (internal quotation marks omitted); *Manley v. Thomas*, 255 F. Supp. 2d 263, 268 (S.D.N.Y. 2003) (denying the plaintiff's class-of-one claim because there was no evidence that the plaintiff was "subjected to irrational and wholly arbitrary acts and intentional disparate treatment" from other prisoners (internal quotation marks omitted)).

Plaintiff states, "I was treated very differently, because at this very present time you still have mess hall workers [assigned to work in the mess hall] program that take[] PSU medication and [are] insulin dependent." (Compl. 9.) However, Plaintiff does not plead any details about the alleged, comparable group of inmates, thus dooming his claim. "Well-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential

component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Bishop v. Best Buy, Co.*, No. 08-CV-8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (citation and internal quotation marks omitted) (dismissing the plaintiff's equal protection claim because he failed to allege any similarly situated individuals who were treated differently); *see also Segreto v. Town of Islip*, No. 12-CV-1961, 2014 WL 737531, at *7–8 (E.D.N.Y. Feb. 24, 2014) (dismissing equal protection claim where the "[p]laintiffs merely allege[d] that others [were] allowed to get permits, but it [wa]s unclear whether those properties ha[d] any circumstances similar to [the] [p]laintiffs"). Moreover, as noted above, Plaintiff does not allege which Defendant was personally involved in Plaintiff's removal from his work program. *See Brown*, 2018 WL 2976023, at *3 (holding that to establish liability under a § 1983 claim, a plaintiff must show that a defendant was personally involved in the allegedly unlawful conduct). Thus, to the extent that Plaintiff asserts a "class-of-one" equal protection claim, the claim fails and is thus dismissed.[6]

### 2. Claims Against Cruz

Aside from making allegations against all Defendants, Plaintiff also makes specific allegations with respect to Cruz. Plaintiff alleges that Cruz (1) unlawfully denied Plaintiff's attempt to return to his work program the day after his transfer, (*see* Compl. 9–10); (2) conducted unwarranted searches of Plaintiff's cell three times a day for over a month during an unspecified period after he filed his grievance, (*see* Pl.'s Reply Letter 7); and (3) in retaliation for Plaintiff's

---

[6] Because the Court dismisses Plaintiff's Fourteenth Amendment claims as to his transfer and removal from his work program, it need not reach Defendants' alternative arguments that Section 1997e(e) of the Prisoner Litigation Reform Act bars Plaintiff's claim because he did not suffer physical injury and that Defendants are entitled to qualified immunity because they did not violate clearly established law. (*See* Defs.' Mem. 8.)

complaint about being moved, searched Plaintiff's cell "upon the first couple of minutes of being transferred," (Pl.'s Mem 2–3).

### a. Claims Arising Out of Denying Plaintiff's Return to Work Program

As discussed above, where Title II ADA claims against government officials in their official capacities are permitted, they survive only if a plaintiff can establish that the alleged violation was motivated by either discriminatory animus or ill will due to the disability. (*See supra* Section II(B)(1)(a).); *Garcia*, 280 F.3d at 112. Here, Plaintiff makes the conclusory allegation that, "[i]t was further discriminatory the very next day when I went to go to my program from 'A' block just to be turn[ed]-back by Officer Cruz, who called 'A' block and told Officer Nighthawk, to escort me out of the mess hall . . ." (Compl. 9–10.) Plaintiff does not provide any facts to suggest that Cruz acted with discriminatory animus or ill will when he denied Plaintiff re-entry to his work program in B-Block. Thus, Plaintiff fails to state an ADA claim against Cruz.

Any due process claim against Cruz also fails because, as detailed above, (*see supra* Section II(B)(1)(b)(i)), a prisoner has no protected liberty interest in a particular job assignment. *See Johnson*, 569 F.3d at 44.

Any equal protection claim against Cruz also fails because, as detailed above, (*see supra* Section II(B)(1)(b)(ii)), Plaintiff fails to allege Cruz intentionally treated him differently than other prisoners who attempted to return to a work assignment they were removed from. *See Bishop*, 2010 WL 4159566, at *11 (dismissing the plaintiff's equal protection claim because he failed to allege any similarly situated individuals who were treated differently).

Thus, all claims against Cruz arising out Plaintiff's transfer to A-Block and the loss of his mess hall job fail.

<u>b.  Claims Arising Out of Searches of Plaintiff's Cell</u>

<u>i.  First Amendment Retaliation Claim</u>

Plaintiff appears to raise a First Amendment Retaliation claim against Cruz for both the August 2015 search of his cell that Plaintiff alleges took place within minutes of him being moved to A-Block, (Pl.'s Mem 2–3), and the allegedly unwarranted searches of his cell three times a day for over a month during an unspecified period, (Pl.'s Reply Letter 7).

To state a First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that . . . [D]efendant took adverse action against . . . [P]laintiff, and (3) that there was a causal connection between the protected conduct and the adverse action."  *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (alterations and internal quotation marks omitted); *see also Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (same).  "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed district courts to "approach prisoner retaliation claims with skepticism and particular care."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (internal quotation marks omitted)).  Accordingly, First Amendment retaliation claims must be supported by "specific and detailed factual allegations" and not stated in "wholly conclusory terms."  *Dolan*, 794 F.3d at 295 (2d Cir. 2015) (internal quotation marks omitted); *see also Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

"The filing of lawsuits or prison grievances is a constitutionally protected activity."

*Houston v. Zen Zen*, 388 F. Supp. 2d 172, 174 (W.D.N.Y. 2005); *see also Dolan*, 794 F.3d at 294

("It is well established that retaliation against a prisoner for pursuing a grievance violates the

right to petition government for the redress of grievances guaranteed by the First and Fourteenth

Amendments and is actionable under § 1983." (internal quotation marks omitted)); *Graham,* 89

F.3d at 80 ("This court has held that retaliation against a prisoner for pursuing a grievance

violates the right to petition government for the redress of grievances guaranteed by the First and

Fourteenth Amendments and is actionable under § 1983."); *Baskerville v. Blot*, 224 F. Supp. 2d

723, 731 (S.D.N.Y. 2002) (noting that a "prisoner's filing of a grievance" and "the filing of a

lawsuit" are "constitutionally protected activit[ies]").

Defendants argue that Plaintiff's claim here fails because "retaliatory cell searches do not

violate the Constitution or support a federal claim." (Defs.' Reply 2.) The Court agrees to the

extent that "neither the United States Supreme Court nor the Second Circuit has ever held that a

cell search can be the basis of a First Amendment retaliation claim." *Jones v. Harris,* 665 F.

Supp. 2d 384, 398 (S.D.N.Y. 2009) (noting that although it is not well-settled that cell searches

can be the subject of a First Amendment retaliation, it is well-settled that cell searches can be the

subject of an Eighth Amendment cruel-and-unusual punishment claim). Moreover, several

courts in the Second Circuit have expressly held that retaliatory searches do not constitute an

adverse action under the second prong of a retaliation claim. *See Bumpus v. Canfield*, 495 F.

Supp. 2d 316, 327 (W.D.N.Y. July 20, 2007) ("It is well-settled . . . that [a] plaintiff cannot base

a retaliation claim against [the] defendant . . . based on a cell search."); *Salahuddin v. Mead*, No.

95-CV-8581, 2002 WL 1968329, *5–6 (S.D.N.Y. Aug. 26, 2002) (dismissing First Amendment

retaliation claim based on cell searches); *see also Henry v. Annetts*, No. 08-CV-286, 2010 WL

3220332, at *2 (S.D.N.Y. July 22, 2010) ("Cell searches . . . are an ordinary part of prison life and would not (and do not) deter the average inmate from continuing to exercise his First Amendment rights.").[7]  Thus, Plaintiff's First Amendment retaliation claim is dismissed.

### ii.  Eighth Amendment Claim

Plaintiff cites the Eighth Amendment in his filings and the Court thus liberally reads his Complaint to allege an Eighth Amendment violation for the repetitive and unwarranted cell searches he was subjected to.  (*See generally* Pl.'s Mem.; Pl.'s Reply Letter.)

A prisoner has no reasonable expectation of privacy in his prison cell.  *See Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984).  As a result, even cell searches "conducted solely for harassment" do not implicate the Fourth Amendment.  *Willis v. Artuz*, 301 F.3d 65, 68 (2d Cir. 2002).  However, prison cell searches are actionable to the extent that they constitute cruel and unusual punishment in violation of the Eighth Amendment, "which is to say, if the cell search lacked any legitimate penological interest and is intended solely to harass."  *Jones*, 665 F. Supp.

_____

[7] Even if a cell search could be an adverse action, Plaintiff probably could not show a causal connection between the filing of his grievance and the searches.  With respect to the August 2015 search, it appears Cruz searched Plaintiff's cell *before* Plaintiff filed a grievance.  According to one of Plaintiff's own exhibits, Plaintiff formally filed his grievance on September 1, 2015.  (*See* Compl. 26)  Although Plaintiff did submit a letter to the Green Haven administration on August 26, 2015, (*see* Compl. 19), Plaintiff claims that Cruz searched his new A-Block cell on August 25, 2015—the day of his transfer.  Although Plaintiff provides what appears to be a complaint letter dated August 25, 2015, (*see* Compl. 24), the letter is not addressed to anyone and it is not signed.  Even if the letter was filed on August 25, 2015, Plaintiff alleges that Cruz searched his cell "upon the *first couple of minutes* of being transferred."  (Pl.'s Mem. 2–3) (emphasis added).)  It is highly implausible that Plaintiff managed to file his letter within minutes of being transferred and before Cruz arrived.  Thus, there is no plausible showing of a "causal connection between the protected conduct and the adverse action."  *Holland,* 758 F.3d at 225 (alteration and internal quotation marks omitted).  With respect to the searches conducted three times a day for over a month, Plaintiff does not specify when these searches took place and therefore also fails to allege a causal relationship.  *See Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) (holding that plaintiff's "failure to set forth a time frame for the alleged events . . . precludes inference of a causal relationship") *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

2d at 395; *see also Lashley v. Wakefield*, 367 F. Supp. 2d 461, 470 (W.D.N.Y. 2005) (same); *Moncrieffe v. Witbeck*, No 97-CV-253, 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (same). To plead an Eighth Amendment violation, a prisoner must allege that cell searches were conducted "with the specific intent to cause plaintiff harm and that the searches in fact caused him harm." *Jones*, 665 F. Supp. 2d at 395 (internal quotation marks omitted). In this respect, a plaintiff must (1) establish that he suffered an objectively sufficient, serious constitutional deprivation, and (2) provide facts demonstrating that the defendant was deliberately indifferent to the plaintiff's constitutional rights. *See Smith v. Carpenter*, 316 F.3d 178, 183–86 (2d Cir. 2003); *see also Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017). The first prong is objective and requires that prison officials provide inmates with "basic human needs, one of which is reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 30, 33 (1993) (internal quotation marks omitted)). "The second prong of the deliberate indifference test, culpable intent, . . . involves a two-tier inquiry." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). In particular, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id.*

To satisfy the objective prong, "the deprivation alleged by the prisoner must be in objective terms sufficiently serious such that the deprivation denied the minimal civilized measure of life's necessities." *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357–58 (S.D.N.Y. 2010) (citing *Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir. 1996) (alterations and internal quotation marks omitted)). The Court is not aware of a bright line rule as to how many cell searches over any specific period satisfy the objective prong. Courts in the Second Circuit have held that a single search or even three searches in a one-month period do not satisfy the objective

prong. *See, e.g.*, *Shtilman v. Makram*, No. 14-CV-6589, 2018 WL 3745670, at *6 (S.D.N.Y. Aug. 6, 2018) (holding that a single search without additional allegations fails to rise to the level of a constitutional violation); *Little v. Municipal Corp.*, 51 F. Supp. 3d 473, 498–99 (S.D.N.Y. 2014) (holding that three searches in a one-month period did not rise to the level of constitutional violation); *Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013) (holding a single search fails to rise to the level of a constitutional violation, even where the plaintiff satisfied the subjective requirement for such a claim); *Jones*, 665 F. Supp. 2d at 395 (holding that three cell searches in six weeks was not "so much a departure from the norm as to be greater than a *de minimis* disruption" and did not provide basis for a claim of cruel and unusual punishment). However, the Eighth Circuit has held that retaliatory searches of an inmate's cell 10 times a day over a 19-day period amount to an Eighth Amendment violation. *See Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991). Lower courts outside the Second Circuit have reached similar conclusions. *See, e.g.*, *Williams v. Southwoods State Prison*, No. 07-CV-2337, 2007 WL 1752088, at *3 (D.N.J. June 13, 2007) (holding that plaintiff's allegations of three searches in three days and disciplinary filings lodged against him solely for harassment were sufficient to avoid dismissal); *Wilfong v. Morris County Corr. Facility*, No. 06-CV-2932, 2006 WL 3392938, at *3–4 (D.N.J. Nov.21, 2006) (holding that alleging daily searches over eleven days was sufficient to survive motion to dismiss).

Here, Plaintiff alleges that Cruz conducted unwarranted searches of his cell three times a day for over a month and that he did so in retaliation because Plaintiff filed a grievance. (Pl.'s Reply Letter 7.)[8] The Court finds that searching a prison cell three times a day every day for

---

[8] In his opposition to Defendants' Motion to Dismiss, Plaintiff states that "[his] cell was searched no less than 3 times a day—every day for 30 days" but fails to name Cruz as the responsible officer. (Pl.'s Mem. 3.) Because Plaintiff named Cruz as the party responsible for

over a month, is similar in its frequency and intensity to the searches held to be violative in *Scher*, 943 F.2d at 924, and amounts to an Eighth Amendment violation.  Thus, this claim survives the Motion To Dismiss.

### 3.  Claims Against Bernstein

Plaintiff appears to allege that Dr. Bernstein provided him with "improper medical treatment," and that this was related to Dr. Bernstein being "controlled by prison officials to lie." (Pl.'s Reply Letter 7).  Plaintiff also alleges that "by speaking to Dr. Bernstein[,]" Collado "made sure that Plaintiff was not given his medical needs."  (Pl.'s Mem. 9.)

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners."  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted).  "A deliberate indifference claim contains two requirements. The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious . . . [t]he second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care."  *Id.* at 138 (alterations, citations, internal quotation marks omitted).  Under the first objective requirement, a court must inquire first, "whether the prisoner was actually deprived of adequate medical care," and second, "whether the inadequacy in medical care is sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).  Adequate medical care is reasonable care such that "prison officials who act reasonably cannot be found liable."  *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).  Under the second inquiry, the Court examines "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *Salahuddin*, 467 F.3d at 280.

---

this conduct elsewhere in his filings, (Pl.'s Reply Letter 7), the Court considers these allegations to pertain to Cruz.  Plaintiff should clearly allege each Defendant's personal involvement in each search in the Amended Complaint.

As part of this objective element, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented "a non-exhaustive list" of factors to consider: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment; (2) whether the medical condition significantly affects daily activities; and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Morales v. Fischer*, 46 F. Supp. 3d 239, 247 (W.D.N.Y. 2014) (same).

Plaintiff fails to allege any facts to support his allegation that Dr. Bernstein improperly treated him. For example, Plaintiff does not point to any instance where he was in need of medical care and did not receive it, or any instances in which he received medical care and it was entirely improper. In fact, Plaintiff alleges instances in which he did receive medical care related to his prostate cancer. (*See* Compl. 10.) Plaintiff alleges that his diarrhea incident was related to radiation treatment he was receiving. (*Id*. at 11.) Plaintiff acknowledges that prison staff administered his diabetes medication to him "1:1." (*Id*. at 5, 23.) These instances contradict Plaintiff's allegation that he "was not given his medical needs." (Pl.'s Mem. 9.) Moreover, when Plaintiff alleges that his "injection for [his] medical [d]isabilit[y] 'was not' given to [him] [] daily," (Pl.'s Reply 4), he fails to provide any dates as to when he was not provided his injection, and does not mention Dr. Bernstein at all. Elsewhere in his pleadings, Plaintiff also alleges that he received "no medical treatment for 98 days." (Pl.'s Mem. 12.) However, Plaintiff does not provide any facts as to what type of medical treatment he was supposed to receive and

when.  Furthermore, Plaintiff again does not name Dr. Bernstein as being responsible for this

alleged deprivation of medical care.  Thus, any Eighth Amendment claim against Dr. Bernstein

is dismissed.[9]

### 4.  Claims Against Collado

#### a.  Cell Search on December 30, 2015

Plaintiff alleges that in retaliation for filing a grievance about being moved to A-Block,

Collado and Correction Officer Mendez, a non-party, searched Plaintiff's cell on December 30,

2015 looking to confiscate some legal documents that Plaintiff intended to submit to the Court.

(*See* Compl. 11.)  As discussed above, (*see supra* section II(B)(2)(b)(i)), Plaintiff's cell search

cannot serve as the basis of his First Amendment retaliation claim.  *See Bumpus*, 495 F. Supp. 2d

at 327 (holding that a plaintiff cannot base a retaliation claim against a defendant on a cell

search); *Salahuddin*, 2002 WL 1968329, *5 (dismissing First Amendment retaliation claim based

on cell searches).

Plaintiff also fails to state an Eighth Amendment claim because one search generally

cannot, as a matter of law, constitute harassment under the Eighth Amendment.  *See Shtilman*,

2018 WL 3745670, at *6 (holding that a single search fails to rise to the level of a constitutional

---

[9] Given the dearth of allegations relating to Dr. Bernstein, or any mention of supervisory liability, the Court does not read Plaintiff's Complaint as raising a claim against Dr. Bernstein in his capacity as Director of Health Services.  If Plaintiff amends his Complaint and points to specific instances of not receiving medical treatment or receiving improper medical treatment, by one of Dr. Bernstein's subordinates, the Court notes that a supervisor may be liable if:  (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

violation); *Mateo*, 2013 WL 3863865, at *8 (same).  Plaintiff alleges one search during which Collado attempted to seize his legal documents.  Plaintiff does not even specify whether Collado did in fact take his legal documents or what those documents were.

Thus, Plaintiff's First and Eighth Amendment claims against Collado based on the December 30, 2015 search are dismissed.

### b.  Destruction of Plaintiff's Property

Plaintiff also alleges that at another unspecified point in time Collado "caused 'destruction' of [P]laintiff's property" within his cell.  (Pl.'s Reply Letter 4.)  Although Plaintiff does not assert any specific constitutional violations, the Court identifies two potential claims: a Fourteenth Amendment Due Process claim and a First Amendment retaliation claim.  It will address them in turn.

### i.  Fourteenth Amendment Due Process Claim

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of . . . the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." *Hudson,* 468 U.S. at 533; *see also Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470, at *13 (S.D.N.Y. Sept. 29, 2014) (same).  In fact, "'the state's action is not complete unless and until it provides or refuses to provide a suitable postdeprivation remedy.'" *Acevedo*, 2014 WL 5015470, at *13 (quoting *Hudson*, 468 U.S. at 533).  In applying this doctrine, "the Second Circuit has determined that 'New York in fact affords an adequate post-deprivation remedy in the form of, inter alia*,* a Court of Claims action.'" *Id.* (italics omitted) (quoting *Jackson v. Burke,* 256 F.3d 93, 96 (2d Cir. 2001)); s*ee also Malik v. City of N.Y.*, No. 11-CV-6062, 2012 WL 3345317, at *11 (S.D.N.Y. Aug. 15, 2012) ("New York provides . . . an adequate post-deprivation remedy in the form of state law causes of action for

negligence, replevin, and conversion."), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012). District courts thus routinely dismiss claims by inmates who assert that they were deprived of property by corrections officers in New York. *See, e.g.*, *West v. City of New York*, No. 13-CV-5155, 2014 WL 4290813, at *6 (S.D.N.Y. Aug. 28, 2014) (holding "the deprivation of [the inmate's] property interest in his mail is not a cognizable constitutional injury" given the availability of "adequate state post-deprivation remedies" under New York law (internal quotation marks omitted)); *JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *32 (S.D.N.Y. Apr. 24, 2014) (dismissing an inmate's deprivation of property claim because "the existence of an adequate post-deprivation state remedy precludes a due process claim under § 1983"), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Green v. Niles*, No. 11-CV-1349, 2012 WL 987473, at *6 (S.D.N.Y. Mar. 23, 2012) (dismissing an inmate's claim because "a prison's loss of an inmate['s] property . . . will not support a due process claim redressable under § 1983 if adequate state post-deprivation remedies are available" (internal quotation marks omitted)).

Here, the Complaint includes only the bare allegation that Collado "caused 'destruction' of [P]laintiff's property" within his cell. (Pl.'s Reply Letter 4.) Plaintiff provides no additional details as to what property was destroyed or how, and makes no allusion to a facility-wide practice. Because the Complaint thus suggests the deprivation of property was "effected through random and unauthorized conduct of a state employee"—as opposed to "established state procedures"—Plaintiff has an adequate post-deprivation remedy under state tort law. *Jackson,* 256 F.3d at 96. Consequently, he cannot sustain a Fourteenth Amendment due process claim based on the deprivation of his personal property. *See Franco v. Kelly*, 854 F.2d 584, 588 (2d

Cir. 1988) (noting that the "mere deprivation of personal property would not rise to the level of a constitutional injury").

Plaintiff also asserts a First Amendment retaliation claim, based on the destruction of his property allegedly in response to Plaintiff's grievance about being moved to A-Block.  As outlined above in Section II(B)(2)(b)(i), a plaintiff asserting a First Amendment retaliation claim must allege that the defendant took adverse action against the plaintiff.  *See Holland*, 758 F.3d at 225; *Washington*, 2015 WL 1439348, at *9 (same).  Retaliatory destruction of a prisoner's personal property can qualify as an adverse action when there is at least a "substantial amount" of personal property destroyed.  *See Smith v. City of New York*, No. 03-CV-7576, 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (finding adverse action where the defendant was missing "nine hundred dollars worth of personal property" and a "substantial amount of his legal materials from his cell and locker").  However, destruction of an inmate's property is not actionable where it involves a de minimis deprivation.  *See Davis v. Jackson*, 15-CV-5359, 2018 WL 358089, at *11 (S.D.N.Y. Jan. 8, 2018) ("The one-time taking of Plaintiff's belt [was] a de minimis action and does not constitute an adverse action."); *Fann v. Arnold*, No. 14-CV-6187, 2016 WL 2858927, at *2 (W.D.N.Y. May 16, 2016) (holding that the plaintiff's allegation of property destruction "constitute[d] a de minimis act of retaliation" where the plaintiff had alleged that "all of his property was thrown in the shower").  Here, Plaintiff vaguely asserts that at some unspecified date, Collado destroyed his property.  (Pl.'s Reply Letter 4.)  Plaintiff fails to specify what exactly was destroyed, thus dooming this cause of action.  *See Fann*, 2016 WL 2858927, at *2 (finding the plaintiff's vague allegations that officers trashed his cell without specifying what exactly was destroyed as de minimis and insufficient to support his retaliation claim).  Thus,

Plaintiff fails to state a First Amendment retaliation claim against Collado with respect to the destruction of his property.

### c.  Medical Treatment

Plaintiff alleges that Collado "made sure that Plaintiff was not given his medical needs []by speaking to Dr. Bernstein."  (Pl.'s Mem. 9)  However, Plaintiff does not specify what Collado said to Dr. Bernstein, what she instructed him to do or refrain from doing, which treatments specifically were at issue or during what time period, and how her discussion with Dr. Bernstein impacted Plaintiff's medical treatment.

Inasmuch as Plaintiff seeks to bring a claim against Collado pursuant to a theory of supervisory liability, his claim fails because as discussed in Section II(B)(3), Plaintiff has failed to state a claim against Dr. Bernstein.  *See Alston v. Bendheim*, 672 F. Supp. 2d 378, 388 (S.D.N.Y. 2009) ("The failure to state a claim for an underlying constitutional violation forecloses supervisory liability."); *Ramos v. Artuz*, No. 00-CV-194, 2003 WL 342347, at *11 (S.D.N.Y. Aug. 27, 2002) (finding no supervisory liability claim existed where there was no constitutional violation by supervisor's subordinates).  Therefore Plaintiff fails to state a claim against Collado with respect to her unspecified conversation with Dr. Bernstein.

### d.  Miscellaneous Allegations Against Collado

Plaintiff makes several vague allegations against Collado.  For example, Plaintiff alleges that Collado was "the ring leader" and "made sure she came to [Plaintiff's] cell every other day .  .  . to make sure [] that [Plaintiff] was in 'pain[,]'" (Pl.'s Mem. 12.), and that she instructed "correction officers under her control" to "cause pain, fear, confinement, no medical attention, sexual abuse, false reports, segregation," among other harms, to Plaintiff, (*id*. at 9).  Plaintiff does not specify what Collado did when she came to his cell or what it means that she made sure

Plaintiff was in pain.  Plaintiff does not allege Collado physically assaulted him, nor does he point to an instance where other officers under her control or at her instruction, caused him harm. It is unclear what constitutional violation Plaintiff is asserting with respect to these vague allegations.  Plaintiff also makes ad hominem attacks against Collado, stating for example that Collado acted as though she was "running Auschwitz."  (*Id*.)  However, Plaintiff fails to tie this allegation to any specific conduct or any harm Plaintiff allegedly suffered.  While there "is an obligation on the part of the [C]ourt to make reasonable allowances" when reviewing pro se submissions, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks omitted), the Court cannot divine what claim Plaintiff means to allege with these statements.  Thus, Plaintiff fails to state a claim against Collado based on these factual allegations

### 5.  Remaining Allegations Fail to Plead Defendants' Personal Involvement

Plaintiff makes several factual allegations that either specifically implicate non-parties or that fail to allege any involvement by the Defendants.  All of the allegedly retaliatory behavior reports were written by non-parties.  (Compl. 11–12.)  The allegations of sexual assault are made against Officer Stevens, a non-party.  (Compl. 11; Pl. Reply Letter 5.)  The allegations that Plaintiff was prevented from praying and his Bibles were burned, which could raise a possible First Amendment claim, do not specify which prison officials participated in the alleged conduct. (Pl.'s Mem. 6.)  The numerous allegations that Plaintiff was deprived of water, food, and other basic life necessities, as well as that he was beaten, which could raise a possible Eighth Amendment claim, do not specify which prison officials participated in the alleged conduct and do not name Defendants as being involved.  (Pl.'s Mem. 4, 12; Pl.'s Reply Letter 3.)  "A complaint based upon a violation of [§] 1983 that does not allege facts establishing the personal

involvement of an individual defendant fails as a matter of law." *Hernandez v. Sposato*, No. 12-CV-2530, 2014 WL 3489818, at *4 (E.D.N.Y. July 9, 2014). And so it is here.

### 6. Qualified Immunity

In addition to attacking Plaintiff's ability to prove his causes of action, Defendants also assert that the Court should dismiss all claims against them because they are protected by qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City and Cty of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (alteration and internal quotation marks omitted)). Because qualified immunity is "an affirmative defense [that] . . . reflects an immunity from suit rather than a mere defense to liability[,] . . . it is appropriate to decide the issue of qualified immunity, when raised, at an early stage of the litigation, such as when deciding a pre-answer motion to dismiss." *Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013) (italics, citations, and internal quotation marks omitted), *aff'd*, 751 F.3d 78 (2d Cir. 2014).

In determining whether a right is clearly established, the "inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (internal quotation marks omitted). "In the Second Circuit, a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant

would have understood from the existing law that his conduct was unlawful." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 702 (S.D.N.Y. 2011) (internal quotation marks omitted).

At least one court in the Second Circuit has suggested that defendants may not be entitled to qualified immunity for conducting cell searches that amount to cruel-and-unusual punishment under the Eighth Amendment. *Cf. Jones*, 665 F. Supp. 2d at 398 ("[Defendant] would be entitled to qualified immunity on a claim of First Amendment retaliation relating to the cell searches, since it is not well-settled that cell searches can be the subject of a First Amendment retaliation (as opposed to an Eighth Amendment cruel-and-unusual punishment) claim."). The Eighth Circuit similarly has held that a corrections officer was not entitled to qualified immunity for conducting a search that amounted to cruel and unusual punishment. *Scher*, 943 F.2d at 925. The court reasoned,

> we are not dealing with an esoteric matter of unsettled law of which a guard could not reasonably be expected to know. This is a clear case of a prisoner who was subjected to retaliatory cell searches . . . [and][t]he law making retaliation for the exercise of a constitutional right actionable under § 1983 has been established for some time and an objectively reasonable official could not fail to know of it. Furthermore, the fact that previously no court has held that cell searches constitute an [E]ighth [A]mendment violation is irrelevant. The U.S. Supreme Court has stated that the action in question need not have been previously held unlawful, but in the light of pre-existing law the unlawfulness must be apparent . . . . Certainly the unlawfulness of [the defendant's] retaliatory conduct must have been apparent to him. The basic course of decent human conduct precludes the infliction of such trauma on one in custody

*Id.* (citations omitted). Additionally, in other Eighth Amendment cases courts in the Second Circuit have held that prisoners "undoubtedly" had a right to be free from various forms of cruel-and-unusual punishment. *See, e.g.*, *Hardy v. City of New York*, 732 F. Supp. 2d 112, 138 (E.D.N.Y. 2010) ("There is undoubtedly a clearly established right to be free from deliberate indifference to serious medical needs."). "Courts need not have ruled in favor of a prisoner under precisely the same factual circumstance in order for the right to be clearly established."

*Ford v. McGinnis,* 352 F.3d 582, 597 (2d Cir. 2003); *see also Ganek v. Leibowitz*, 874 F.3d 73,

81 (2d Cir. 2017) ("To make this 'clearly established' showing, a plaintiff need not identify a

case directly on point, but precedent must have spoken with sufficient clarity to have placed the

constitutional question 'beyond debate.'") (quoting *al-Kidd*, 563 U.S. at 741))).

At this stage Defendants have not denied or addressed the factual allegation that Cruz

searched Plaintiff's cell three times a day for over a month. They have offered no explanation as

to why a reasonable correction officer would have believed conducting such frequent searches

was lawful and did not violate an inmate's right to be free from cruel and unusual punishment.

The Court thus finds that at this stage Cruz is not entitled to qualified immunity and Plaintiff's

Eighth Amendment claim against him survives Defendants' Motion To Dismiss.

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted in part and denied

in part. All claims are dismissed except for the Eighth Amendment claim with respect to Cruz's

alleges searches of Plaintiff's cell that occurred three times a day for over a month. However,

because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without

prejudice. *See Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining

that "district judges should, as a general matter, liberally permit pro se litigants to amend their

pleadings" unless "amendment would be futile"). Should Plaintiff choose to file an amended

complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified

herein. The amended complaint will replace, not supplement, the current complaint. It therefore

must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The

Court will not consider factual allegations raised in supplemental declarations, affidavits, or

letters. If Plaintiff fails to abide by the 30-day deadline, all dismissed claims could be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 20), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: September 29 , 2018
      White Plains, New York

                                  KENNETH M. KARAS
                                  UNITED STATES DISTRICT JUDGE